Signed and Filed: August 4, 2016



_____
**DENNIS MONTALI**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 12-31601DM |
| KRISTINA MARIE PEREZ KROW, | ) |
| | ) Chapter 7 |
| | ) |
| Debtor. | ) |
| _____ ) | |

MEMORANDUM DECISION ON MOTION FOR RECONSIDERATION OF
PRIOR CONTEMPT RULINGS

On July 8, 2016, this court held a hearing on the motion of Kristina Marie Perez Krow ("Debtor") for reconsideration of an order entered on June 1, 2015, denying her second motion for contempt against Len Nordeman ("Nordeman") and Montgomery Sansome, LP ("Montgomery Sansome") (collectively, "Respondents") for alleged violations of the automatic stay and discharge injunction. Previously, the court had granted in part and denied in part one contempt motion, and had denied another contempt motion. In light of newly discovered facts and other reasons discussed below, the court is vacating its orders denying the contempt motions and concludes that Respondents' post-discharge acts against Debtor, including prosecution of a breach of contract action based on her

purported failure to pay certain litigation expenses, violated the discharge injunction.

In response to the earlier contempt motions, Respondents argued that because the Debtor had entered into a post-petition agreement to pursue the litigation and pay such expenses, her purported obligations to them were not subject to the discharge injunction.  The court therefore denied a 2015 contempt motion against Respondents on the grounds that Debtor had voluntarily opted to continue litigation against her insurers and thus no violation of the discharge injunction had occurred.  Since that ruling, however, a state court has entered a judgment declaring that the post-petition litigation agreement is void and unenforceable on the grounds of coercion and intimidation. Moreover, Nordeman swore in his state court testimony that the post-petition agreement was a "reinforcement" of and "essentially the same" as a pre-petition agreement executed by Debtor.  In other words, it is an unenforceable reaffirmation agreement.

In light of these new developments and for the reasons set forth below, the motion for reconsideration is GRANTED and the court will set a hearing for determination of damages incurred by Debtor as a result of Respondents' conduct.

I.   THE VARIOUS AGREEMENTS[1]

Debtor filed this chapter 7 case on May 29, 2012, and received her discharge on October 16, 2012.  Previously, in 2010, Debtor had suffered a fire at her home.  She retained Montgomery

---

[1]The following discussion constitutes the court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052(a).

-2-

Sansome to make repairs, and Nordeman had her sign a document giving him authority to represent her with respect to her claim against the insurer. The insurer refused to approve or authorize the repairs suggested by Montgomery Sansome but Montgomery Sansome nonetheless commenced the work. When the insurer refused to pay the alleged cost of services provided, Montgomery Sansome demanded an appraisal hearing to determine the value of its services.[2]

On January 5, 2011, Debtor signed a litigation agreement (dated December 29, 2010) with Nordeman in which she agreed to forward all proceeds recovered by her from her insurer to him and to pay the litigation costs "from her other insurance proceeds to which she may otherwise be entitled under her contents replacement or cleaning and repairing [sic]." Under this agreement (the "First Litigation Agreement"), Respondents agreed "not to lien the property or pursue[] legal actions against [Debtor] for services and materials provided." Montgomery Sansome also promised to accept the results of any "appraisal hearing" as settlement for the work it had performed.[3] *See* First Litigation Agreement appended as Exhibit A-1 to the Further Declaration of Thomas M. Harrelson in Support of Debtor's Motion for Reconsideration Regarding Post Discharge Injunction Sanctions

---

[2] At the appraisal hearing against Debtor's insurer, Montgomery Sansome sought more than $200,000 in additional costs for repairs to the garage and laundry room. The arbitrators awarded only $78,683.37 in compensation, and Montgomery Sansome received all but approximately $3,000.00 of that amount.

[3] This agreement uses the term "appraisal hearing" and "arbitration" interchangeably. For example, the third paragraph states: "Leonard Nordeman agrees to fund the cost of arbitration up front in order that the matter is appropriately heard at the appraisal hearing."

-3-

(Docket No. 67).

Following the insurer's rejection of the claims submitted by Nordeman and Montgomery Sansome, Debtor signed another agreement drafted by Nordeman in which she authorized Montgomery Sansome to pursue bad faith litigation against the insurer. Debtor was entitled to retain 25% of the net proceeds and Montgomery Sansome agreed to "finance the litigation including legal fees, filing costs, expert witnesses, etc." with costs deducted from any recovery before the 75-25 percentage split. *See* Assignment of Litigation Rights and Benefits executed by Debtor on January 13, 2012, attached as Exhibit B to the Declaration of Thomas M. Harrelson [Docket No. 63) ("Second Litigation Agreement"). A clearer but unsigned version of the Second Litigation Agreement is attached as Exhibit A-2 to the Further Declaration of Thomas M. Harrelson [Docket No. 67-1). Notably, neither Nordeman nor Montgomery Sansome produced or acknowledged this document when presenting their defenses to Debtor's prior contempt motions.

In September 2012, Debtor signed yet another litigation agreement with Respondents (the "Third Litigation Agreement").[4] In light of this post-petition litigation agreement, the court held that Respondents had not violated the discharge injunction as Debtor had "re-entered the fray." Consequently, this court did not stay the Respondents' state court breach of contract

---

[4] In her first request for production of documents from Montgomery Sansome, Debtor sought "[a]ny and all documents regarding the business transactions between [it and her] for the period from January 1, 2010 to the present." In a response dated November 4, 2014, Montgomery Sansome stated that there are at least five contracts between it and Debtor.

-4-

litigation with respect to the Third Litigation Agreement.
Subsequent events demonstrate that the court erred in making this
determination, including: (1) the state court's adjudication that
the Third Litigation Agreement was void and unenforceable, as
Nordeman obtained Debtor's consent through coercion and threats,
(2) Nordeman's admissions under oath that the Third Litigation
Agreement was a "reinforcement" agreement and was "essentially the
same" as the pre-petition agreements, (3) Nordeman's additional
admission under oath that he had his attorney meet with Debtor
post-petition (September 2012) to "get one [another agreement] to
replace it [a pre-petition agreement]. If I'm going to move
forward, then I probably got to have some written agreement so I
can move forward with something in writing [sic]." In other
words, the Third Litigation Agreement was -- as Debtor argued in
her prior contempt motions -- an unenforceable and void
reaffirmation agreement. *See* Transcript attached to Declaration
of Thomas M. Harrelson filed on May 24, 2016 at Docket No. 54; *see
also* <u>Order of Judgment on Montion Pursuant to C.C.P. § 631.8</u>
entered on January 7, 2016, attached as Exhibit A to Mr.
Harrelson's May 24 declaration (Docket No. 54).

II.  <u>THE POST-DISCHARGE LITIGATION AGAINST DEBTOR</u>

Almost two years after the petition date and approximately
sixteen months after Debtor received her discharge, Montgomery
Sansome filed a state court complaint against her for (1) breach
of contract and (2) common counts. In particular, Montgomery
Sansome wanted to recover from Debtor the amounts it initially
attempted to obtain from the insurance company (which had rejected

-5-

those amounts), contending that Debtor had breached the Third Litigation Agreement.  Debtor sought an order of contempt against Respondents for violating the discharge injunction.

By order entered on February 2, 2015, this court granted Debtor's motion in part, finding Montgomery Sansome "in contempt of court having violated the discharge injunction by its prosecution in [the common counts cause of action] of any liability arising out of facts that predate [Debtor's] bankruptcy filed on May 29, 2012.  Any contracts signed prior to that date have been discharged by Movant's bankruptcy."  This court also denied the contempt motion in part, finding that Montgomery Sansome's cause of action for enforcement of a "litigation agreement" purportedly signed by Debtor post-petition did not violate the discharge injunction.

Several months later (in May 2015), notwithstanding the court's finding that Respondent's prosecution of causes of actions predating the petition date constituted contempt, Montgomery Sansome filed an amended state court complaint that included a claim for $3,752.84, representing the small amount of funds retained by Debtor following the pre-petition arbitration award in her favor.  Montgomery Sansome, having received $75,683.37 from that particular award, contended that it was entitled to the full amount.  It also sought damages based on Debtor's purported failure to cooperate in the prosecution of pre-petition claims against the insurer.  Debtor filed a second contempt motion, and Respondents argued that the claim reflected damages arising from the post-petition breach of the pre-petition agreement.  This court concluded that to the extent the debtor had signed the post-

-6-

petition litigation agreement, she had assumed new obligations to Respondents and debts arising from the Third Litigation Agreement were thus not subject to the discharge injunction.

After that ruling, a seven-day trial proceeded in state court. The state court entered judgment in favor of Plaintiff, finding that (1) no "valid and enforceable contract was ever formed between" Debtor and Montgomery Sansome with respect to any litigation agreement; (2) that Montgomery Sansome commenced unsuccessful bad faith litigation against insurer without the consent and knowledge of Debtor; (3) that even if the litigation agreement were valid, Debtor's consent was procured through threats, intimidation and undue influence; (4) even if the litigation agreement were valid, it was procedurally and substantively unconscionable pursuant to California Civil Code section 1670.5; and (5) the litigation agreement was invalid as it violated the California Insurance Code. *See* State Court "Order of Judgment on Motion Pursuant to C.C.P. § 631.8" appended to Debtor's Motion for Reconsideration at Docket No. 53 at pages 15-18.

III. <u>RULING</u>

As the state court concluded that the debtor's consent to purported litigation agreement was procured through threats, intimidation and undue influence, this court erred in finding that Debtor had voluntarily "re-entered the fray." Grounds for relief from that finding and from the court's order denial of contempt sanctions for conduct related to that purported litigation agreement exist under Fed. R. Bankr. P. 9024 (incorporating Fed.

-7-

R. Civ. P. 60(b)(2), (3), (4), and (6)).  Furthermore, Nordeman's admission during the state court trial that the post-petition Third Litigation Agreement was a "reinforcement" agreement and was "essentially the same" as the pre-petition agreements demonstrates that the Third Litigation Agreement was simply an unenforceable reaffirmation of the prepetition obligations.  For those reasons, the court concludes that Respondents' post-discharge conduct did violate the discharge injunction and will vacate its prior orders to the contrary.

    Counsel for Debtor should upload an order vacating the court's order dated June 1, 2015, and comply with B.L.R. 9021-1(c) in doing so.  In addition, no later than August 26, 2016, Debtor should file a declaration setting forth the costs and fees incurred by her in defending the state court action, as well as any other damages arising from the violation of the discharge injunction.  Respondents should file their opposition, if any, no later than September 9, 2016.  The opposition shall be limited to arguments regarding the amount of damages and shall not re-visit the issues of whether Respondents' actions violated the discharge injunction.  The court will then notify the parties if a further hearing or status conference is necessary or whether the matter is taken under submission.

    \*\*\*\* END OF MEMORANDUM DECISION \*\*\*\*

Case: 12-31601    Doc# 68    Filed: 08/04/16    Entered: 08/04/16 12:07:04    Page 8 of 9