Entered on Docket
October 11, 2016
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: October 8, 2016



_____
**DENNIS MONTALI**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>KRISTINA MARIE PEREZ KROW,<br><br>　　　　　　Debtor.<br>_____ | ) Bankruptcy Case<br>) No. 12-31601DM<br>)<br>) Chapter 7<br>)<br>) |

MEMORANDUM DECISION REGARDING THE AWARD OF DAMAGES TO DEBTOR
ARISING FROM RESPONDENTS' VIOLATION OF THE DISCHARGE INJUNCTION

　　On August 4, 2016, this court entered a memorandum decision (Dkt. # 68)(the "memorandum") explaining why it would vacate orders denying contempt sanctions against Len Nordeman ("Nordeman") and Montgomery Sansome, LP ("Montgomery Sansome") (collectively, "Respondents") for violating the automatic stay and the discharge injunction.  In the decision, the court "conclude[d] that Respondents' post-discharge acts against Debtor, including prosecution of a breach of contract action based on her purported failure to pay certain litigation expenses, violated the discharge injunction."  The court instructed Debtor to file a declaration setting forth the costs and fees incurred by her in defending the state court action, as well as any other damages arising from the

violation of the discharge injunction. She did so on August 26, and Respondents filed their opposition to Debtor's claim for damages on September 9.

For the reasons stated below, the court will award Debtor for damages in the amount of $15,630 because of the loss of work time and mental anguish caused by Respondents' violation of the discharge injunction. It will also award the contract amount of the fees and costs ($90,021.86) charged by Harrelson & Associates (in particular, Thomas M. Harrelson and Julian Hubbard) in defending Debtor against attempts by the Respondents to collect discharged obligations. Finally, it will award the fees and costs totaling $44,668.68 incurred by Iaccarino & Church, LLP, in response to Respondents post-discharge collection activities.

**I. GOVERNING LAW**

A discharge under 11 U.S.C. § 524(a)(2) "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor...." *In re Ellett*, 254 F.3d 1135, 1148 (9th Cir. 2001). "A party who knowingly violates the discharge injunction [of § 524(a)(2)] can be held in contempt under [§] 105(a) of the [B]ankruptcy [C]ode." *In re ZiLOG, Inc.*, 450 F.3d 996, 1007 (9th Cir. 2006) (citing *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002), and *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002)). In other words, a willful violation of the discharge injunction can be the basis for a finding of civil contempt and for the imposition of appropriate sanctions under section 105(a). *In re*

*Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003).

The court's contempt authority under section 105(a) is only a civil contempt authority and allows only for civil sanctions as the appropriate remedy. *Dyer*, 322 F.3d at 1192 (considering contempt sanctions in context of stay violation). "Civil penalties must either be compensatory or designed to coerce compliance." *Id.*, citing *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137-38 (9th Cir. 2001). As a remedy for a discharge violation, "compensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction." *Walls*, 276 F.3d at 507.

To be subject to sanctions for violating the discharge injunction, the contemnor's violation of the discharge injunction must be "willful." Under Ninth Circuit law, a violation of the discharge injunction is willful when the alleged contemnor (1) knew that the discharge injunction applied, and (2) intended the actions that violated the discharge injunction. *Zilog, Inc.*, 450 F.3d at 1007; *Hardy*, 97 F.3d 1384, 1390 (9th Cir. 1996). The burden of proof on the issue of willfulness is clear and convincing evidence. *Zilog*, 450 F.3d at 1007.

In addition, bankruptcy courts have the inherent power to sanction parties and their counsel for a broad range of misconduct, including "willfully abus[ing] judicial processes" or committing fraud on the court. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (If a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess

-3-

sanctions against the responsible party.). However, under its inherent authority, a bankruptcy court may only impose sanctions for bad faith conduct or conduct tantamount to bad faith. *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). Sanctions are available "for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* See, also, *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996).

**II. DISCUSSION**[1]

    A. <u>Respondents Are Estopped from Using the Now-Vacated Order As Shield from Liability for Sanctions</u>

In their response to Debtor's request for damages, Respondents argue that imposition of damages is inappropriate because their actions were not willful. In particular, they contend that they could not have known that the discharge injunction applied because of the court's initial determination to allow them to prosecute a breach of contract action arising from a post-petition litigation agreement. However, as the court stated in the memorandum, it based that decision on Nordeman's misrepresentation that the litigation agreement memorialized a voluntary post-discharge decision by Debtor to enter into a new contract to continue litigation against her insurer. The matter was prosecuted before the state court, which found that the agreement was void and unenforceable on the grounds of coercion and intimidation.

More importantly for the purposes of the determination of

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-4-

damages, Nordeman swore in his state court testimony that the post-petition agreement was a "reinforcement" of and "essentially the same" as a pre-petition agreement executed by Debtor. In other words, it was -- despite Nordeman's representations to the contrary to this court -- an unenforceable reaffirmation agreement. *In re Bennett*, 298 F.3d 1059 (9th Cir. 2002) (absent compliance with the specific statutory requirements for a valid reaffirmation agreement, an agreement by a debtor to satisfy a discharged obligation is unenforceable under section 524(a)(4)).

But for the Respondents' misrepresentations and inexcusable withholding of critical evidence, this court would have imposed sanctions initially for violation of the discharge injunction. Respondents clearly gained an advantage from their misconduct: an escape from contempt liability initially and the subsequent ability to proceed with the burdensome and costly state court action that Debtor was forced to defend.[2] Respondents cannot insulate themselves from liability by relying on this court's now vacated decision when that decision was obtained by their own misrepresentations. In other words, they are estopped from using the court's prior determination (now vacated) as a shield from liability on the grounds that they did not "know" the discharge injunction applied. As stated by the Ninth Circuit in *In re Levander*, 180 F.3d 114 (9th Cir. 1999):

> Just as a court may use its inherent power to protect its integrity by vacating a judgment obtained by fraud, it also may amend a judgment for the same purpose. When a court vacates a judgment obtained by fraud, it not

---

[2] A more detailed description of Respondents' misrepresentations and suppression of evidence is set forth in the memorandum.

-5-

> only rids itself of the defilement caused by the fraud, but also restores balance and fairness between the parties by removing the benefit gained by the party that committed the fraud. Amending a judgment serves these same goals by removing the benefit—for example, the avoidance of a judgment against itself—that the party gained by committing fraud on the court.

*Id.* at 1119.

This case is thus distinguishable from *In re Taggart*, 548 B.R. 275, 288 (9th Cir. BAP 2016), cited by Respondents. There, the BAP held that a party's subjective belief, even an unreasonable one, is pertinent in determining which it has knowingly violated the discharge injunction. Unlike here, however, the *Taggert* creditor's subjective belief was a good faith one and not based on a judicial ruling specifically obtained by wilful misrepresentations to, or withholding critical information from, the court. Respondents cannot now claim, based on this court's initial ruling, a lack of knowledge of the applicability of the discharge injunction. They cannot now claim any benefits from these misrepresentations or withholdings. And even if Nordeman reasonably and subjectively believed that the discharge injunction was inapplicable, his conduct in procuring the court's initial decision may be sanctionable under *Chambers* and *Fink*. But the court need not address the judicial sanctions issue as it finds by clear and convincing evidence that the Respondents did knowingly violate the discharge injunction.

B. <u>Appropriate Damages</u>

Debtor is seeking damages in the amount of $15,630 because of loss of work time and mental anguish caused by Respondents' violations of the discharge injunction. While Respondents

question the extent of Debtor's distress, the court finds her description of her emotional stress and trauma compelling and credible. Debtor was put through a nightmare entirely of Respondents' making, and the court would have likely awarded her more had she asked for it.

The court finds the fees of Debtor's counsel reasonable, particularly given the necessity of having to appear here multiple times to seek relief from Respondents' post-discharge activities, and given the necessity of defending a state court trial that would not have occurred but for Respondents' misrepresentations to this court.[3] The fees of all counsel are reasonable, particularly given that they either reduced their fees or hourly rate to be paid by Debtor for defending Respondents' actions. While the court appreciates their accommodation to Debtor, it declines the suggestion to award more than they agreed to bill.[4]

**IV. CONCLUSION**

For the reasons stated above, the court will award Debtor $15,630 in damages caused by Respondents' violation of the discharge injunction. It will additionally award $87,330.00 in contractual fees and $2,691.86 in costs for the fees of Harrelson

---

[3] The state court likewise found Respondents' conduct reprehensible, finding that they had procured Debtor's consent to the post-discharge agreement through threats, intimidation and undue influence; that the litigation agreement procedurally and substantively unconscionable under California law.

[4] The court also rejects Respondents' arguments that they should be able to examine Debtor's counsel's specific time entries. This is not a traditional examination and allowance of fees as typically takes place in this court. Rather, it is an attempt to fix damages suffered by Debtor, including reasonable attorneys fees she has incurred. The court finds the fees charged by both counsel and claimed as part of the damages are reasonable.

-7-

and Associates, and will award the fees and costs totaling $44,668.68 incurred by Iaccarino & Church, LLP. The court is contemporaneously issuing order consistent with this memorandum decision.

**** END OF MEMORANDUM DECISION ****